Westbrook v. Mitchell.

JOHN B. WESTBROOK V. WILLIAM L. MITCHELL, JR.

Slavery, under the Roman law, might originate in three ways, namely, by birth, when the mother was a slave; by captivity in war; and by the voluntary sale of himself, by a freeman.

A few of the slaves in America, it is said, are the descendants of conquered Indians.

But the slavery of negroes of African descent, has its origin, in this country, only by birth of a slave mother; except where other modes of originating it, as to such persons, have been prescribed by statute, from considerations of public policy.

Until the passage of the Act of January 27th, 1858, authorizing free negroes to choose masters, the laws of this state did not recognise any persons as slaves, except such as were the offspring of slave mothers.

And neither a negro of African descent, nor any other person, can sell himself into slavery.

The caution evinced by the legislature, in the Act of January 27th, 1858, prescribing the manner in which free negroes might enter into the condition of slavery, shows that there are reasons of public policy why the right of free negroes to sell themselves, should not be recognised.

APPEAL from Hill. Tried below before the Hon. N. W. Battle. This was a suit by John B. Westbrook, against William L. Mitchell, Jr., for the recovery of a negro, alleged to have been formerly a free negro, but who had, for a consideration stated in the petition, sold himself to the plaintiff, and who had been enticed out of his possession, by the defendant. Exceptions to the petition were sustained by the court, and the cause dismissed.

*Nowlin & Herring*, for the appellant.

*Acock & Stewart*, for the appellee.

BELL, J.—There is but a single question presented by the record; and that arises upon the ruling of the court, sustaining the demurrer to the plaintiff's petition.

We are of opinion, that the demurrer was properly sustained.

Westbrook v. Mitchell.

The allegations of the petition, concerning the transactions in the state of Mississippi, and the agreements made in that state, between the plaintiff and the negro man, who is the subject-matter of the suit, seem to have been made by way of introduction to the principal matter of the petition. The petition does not seek to establish a right to the services of the negro man, during his life, by reason of the agreement which is alleged to have been entered into between the negro man and the plaintiff, in the state of Mississippi. The material allegation of the petition, and the one with which we at present have to do, is, in substance, that the negro man, named in the petition, sometime in the year 1855, being then a free man, did, in the state of Texas, for a consideration in money, sell his freedom to the plaintiff, and agree to be, during the rest of his life, the slave of the plaintiff, in the same manner as if he had been born a slave, the property of the plaintiff. The object of the petition is, to show that the relation of master and slave exists between the plaintiff and the negro man named in the petition. The prayer of the petition is, that the plaintiff may recover the negro man as his slave. It is true, that the plaintiff also prays, that if he cannot recover the negro as his slave, he may have judgment for the sum of $2500, the amount paid out by him, for the use and benefit of the said negro, and that the negro may be sold to pay said amount; but this latter prayer can present no matter for consideration.

We are informed by the Institutes of Justinian, that slavery could originate, under the Roman law, in three ways, viz., by birth, when the mother was a slave ; by captivity in war ; and by the voluntary sale of himself, as a slave, by a freeman, above the age of twenty, for the sake of sharing the price. (2 Kent's Com. 274.) Amongst all the states of antiquity, in which slavery existed, captivity in war was recognised as one of the sources from which it might originate. (Cobb on Slavery.) We are informed by Mr. Cobb, in his chapter on the origin and sources of slavery in this country, that a few of the slaves in America are the descendants of conquered Indians ; and he says, that

" the foundation of their enslavement is the right of conquest, which has been recognised in all countries, as one of the sources of slavery." We do not propose to consider, at any length, the sources from which slavery may originate ; and we have only noticed the fact, that conquered Indians have been enslaved in this country, to show that the fact has not been overlooked. The individual who is claimed as a slave in the petition before us, is described as "a free negro of African descent." So far as we have been able to inform ourselves, the slavery of negroes of African descent, has its origin in this country, in one way only, and that is, by birth of a slave mother ; except where other modes of originating the condition of slavery, as to such persons, have been prescribed by statutes, from considerations of public policy.

Until the passage of the Act of January 27th, 1858, authorizing free negroes, in this state, to choose masters, and to enter into the condition of slavery, the laws of this State did not recognize any persons as slaves, except such as were the offspring of slave mothers. It has never been judicially declared, in this country, so far as we know, that a negro of African descent, or any other person, could sell himself into slavery ; and we do not therefore feel at liberty to recognise this as one of the modes in which slavery may originate. In the Act of January, 27th, 1858, the legislature evinced the greatest caution in prescribing the manner in which free negroes might enter into the condition of slavery. The act requires all the proceedings to be of the most public and formal character. The District Courts must have supervision of the matter. The court must be satisfied that there is no fraud ; that the proposed master is a person of good repute, and that no good reason exists, why the relation of master and slave should not be formed in the particular case. This caution of the legislature will suggest to the intelligent mind, that there are reasons of public policy, why the courts of the State should not recognise the right of free negroes to sell themselves into slavery. The recognition of such a right might lead to its exercise for bad purposes. It would be impossible to

prevent frauds. Sometimes the negro might be the only sufferer, but at other times, the public might feel the bad effects of permitting negroes to reside amongst us, under the nominal protection of designing men. We are not inclined to initiate any new rule, not heretofore recognised in the jurisprudence of the country, but to leave the subject to be regulated by the general and well known law of the land, that the slavery of the negro in this country depends upon birth, and subject to such further regulations as the legislature, in its wisdom, has thought proper to prescribe. The judgment of the court below is affirmed.

Judgment affirmed.